# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 07-cv-00028-REB

STEVEN L. ALLES,

    Plaintiff,

v.

MICHAEL J. ASTRUE,[1] Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1], filed January 4, 2007, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of depression, dysthmia, and brain injury. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on

---

[1] Michael J. Astrue was confirmed by the Senate to replace Jo Anne Barnhart as the Commissioner of Social Security on February 1, 2007. Thus, he is substituted as the defendant in this suit. **FED.R.CIV.P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

February 2, 2006. At the time of the hearing, plaintiff was 54 years old. He has a college degree and past relevant work experience as a chemist. He has not engaged in substantial gainful activity since April 20, 2001.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of such impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform work requiring the capacity to understand, remember, and carry out simple instructions, with only occasional contact with supervisors, co-workers, and the public, and involving little change in routine or job duties. Although these findings precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national economy that he could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude his from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere

existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show

that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges error in the ALJ's assessment of the impact of his brain injury on his residual functional capacity. Specifically, he claims the ALJ erred in (1) failing to articulate whether his brain injury was a severe impairment; (2) failing to afford controlling weight to the opinion of his treating physician; and (3) basing his residual

4

functional capacity assessment on the opinions of the consultative examiners. Because I find that the ALJ properly weighed the conflicting evidence in the record, I affirm.

First, although the ALJ did not specifically find that plaintiff's brain injury was a severe impairment, it is clear from his discussion of the evidence that he considered it to be so. Indeed, his residual functional capacity assessment specifically incorporated functional restrictions to account for the limitations resulting from the brain injury that he found to be supported by the record. Thus, any failure to more particularly articulate his findings regarding severity at step two of the sequential evaluation was clearly harmless. **See Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence); **Alejandro v. Barnhart**, 291 F.Supp.2d 497, 516-17 (S.D. Tex. 2003) (citing cases).

Second, although the ALJ noted that the opinion of plaintiff's treating neuropsychologist, Dr. Thomas L. Bennett, was presumptively entitled to controlling weight,[2] he declined to afford it such weight because he found it inconsistent with Dr. Bennett's own treatment records, the opinions of the other psychologists in the record, and evidence regarding plaintiff's part-time employment post-injury. Substantial evidence in the record supports his conclusions in this regard.

---

[2] The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. **Watkins**, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. **Frey v. Bowen**, 816 F.2d 508, 513 (10th Cir. 1987).

5

Initially, it is clear that Dr. Bennett's opinion that plaintiff is unable to be gainfully employer or is "disabled" is not entitled to any particular weight, as this is an issue reserved solely to the Commissioner for determination. 20 C.F.R. § 404.1527(e)(1). Moreover, although Dr. Bennett concluded from his initial evaluation, performed just a few months after plaintiff's brain injury,[3] that plaintiff would be precluded from all competitive employment (Tr. 125),[4] it is clear that plaintiff made some not insignificant progress in developing compensatory strategies to accommodate his deficits during an intensive, 36-session course of occupational therapy from August, 2001, through February, 2002. (*See* Tr. 197-211.) Although plaintiff clearly still had problems with initiating tasks and consistency when he was discharged, he had, among other gains, "demonstrated and practiced skills adequately to complete a job interview utilizing

---

[3] Plaintiff suffered carbon monoxide poisoning following a suicide attempt on April 20, 2001.

[4] Specifically, Dr. Bennett opined that plaintiff,

> has difficulties with both functional everyday learning and memory and verbal learning and memory. He would have difficulty remembering what he had read or had been told on a job to such an extent that he would not be able to do the type of work he had done in the past. Where he could do something that was less demanding is not clear; but certainly, we found that he was easily distracted off task in a task that had built-in distractions. I would expect that he would have a great deal more difficulty multitasking or staying on a single task in an actual job situation.
>
> He also is slow in his responding. We found during testing that he had to be cued many times to initiate an activity, even if he could do the activity once it was initiated. This type of situation could not be available in the workplace because there is not a workplace where someone can be monitored 100% of the time and cued to respond on an as-needed basis.
> . . . .
>
> <u>Overall, I believe that his performance on the brain injury-sensitive tests is such that Steven could not obtain nor maintain any regular competitive employment. There is no reason to expect that this situation will change in the future. Therefore, he should receive any disability income, including Social Security Disability, for which he may qualify.</u>

(Tr. 124-125 (emphasis in original).)

6

compensatory written information to accommodate for decreased verbal output." (Tr. 197.)

Given these findings, I cannot find that he erred in failing to accord controlling weight to Dr. Bennett's 2001 opinion regarding the severity of plaintiff's functional limitations and their impact on his ability to work. Moreover, Dr. Bennett's Medical Source Statement of Ability To Do Work-Related Activities (Mental), completed in connections with a follow-up report he prepared in June, 2004,[5] described plaintiff's capacity to understand, remember, and carry out short, simple instructions, his ability to interact with the public, supervisors, and co-workers, and his ability to respond appropriately to work pressures and changes in a routine work setting as only moderately impaired. (Tr. 218-219.) These limitations were included in the ALJ's assessment of plaintiff's residual functional capacity. (Tr. 20.)

While the additional "marked" limitations Dr. Bennett found with respect to plaintiff's ability to initiate activities and self-monitor (Tr. 218) were not included in the ALJ's residual functional capacity opinion, his determination to exclude these from the calculus is supported by the contrary evidence of the consultative psychologists, Dr. John Burt and Dr. Regina Johnson, who examined plaintiff. In response to plaintiff's final argument, I do not find these opinions inadequate to support the ALJ's conclusions regarding plaintiff's residual functional capacity. Although Dr. Bennett expressly disagreed with Dr. Burt's reliance on IQ testing as a valid measure of plaintiff's abilities, the ALJ actually agreed with Dr. Bennett's conclusions in that regard. (*See* Tr. 16.) Nevertheless, he ultimately found the examining psychologists' opinions

---

[5] It does not appear that Dr. Bennett actually examined plaintiff in connection with generating this report, but rather only reviewed records. (*See* Tr. 195.)

7

more persuasive, and gave adequate reasons tied to the evidence of record for that conclusion. Ultimately, such conflicts in the evidence are for the ALJ to resolve.[6] **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). Plaintiff's disagreement as to the proper interpretation of Dr. Burt's and Dr. Johnson's findings does not undermine the ALJ's reliance on those opinions.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 21, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**

---

[6] As for Dr. Bennett's opinion that plaintiff must be "closely supervised" (Tr. 195), a limitation that the vocational expert testified would preclude competitive employment (Tr. 253-254), the evidence simply does not support that conclusion. The record is replete with references to the fact that plaintiff can complete tasks if he has a written list to which to refer. Therefore, the ALJ's failure to include that limitation in his conclusions regarding plaintiff's residual functional capacity was not erroneous.